IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TERRY L. POE, )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 10-00290-N
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    Defendant. )

ORDER

Plaintiff Terry L. Poe filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that he was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act (the Act). This action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73 (doc. 18) and pursuant to the consent of the parties (doc. 17). Plaintiff's unopposed motion to waive oral arguments (doc. 16) was granted on January 12, 2011 (doc. 19). Upon consideration of the administrative record (doc. 12) and the parties' respective briefs (docs. 13 and 14), the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

    I.  Procedural History.

Poe filed an application for disability insurance benefits on November 17, 2006, claiming an onset of disability as of August 31, 2006.[1] (Tr. 115-19). Poe also filed an application for Supplemental Security Income benefits on November 17, 2006 (Tr. 120-23), with a protective filing date of November 17, 2006 (Tr. 86). These applications were initially denied on January 12, 2007. (Tr. 88-92). On March 6, 2007, Poe requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 94). Poe's request was acknowledged on March 9, 2007, and Poe was instructed on the procedures that would follow. (Tr. 95-103). On June 13, 2008, Poe was notified that his case would be heard on August 12, 2008. (Tr. 106). The hearing was held as scheduled on August 12, 2008. (Tr. 31-85).

On October 14, 2008, the ALJ issued a decision denying Poe's applications. (Tr. 13-30). The ALJ concluded that Poe retained the residual functional capacity to perform less than a full range of light work. (Tr. 24-28). The ALJ determined that there are other jobs existing in significant numbers in the national economy which Poe can perform. (Tr. 28-30). Consequently, the ALJ concluded that Poe "has not been under a disability, as defined in the Social Security Act, from August 31, 2006, through the date of this decision." (Tr. 30).

Poe requested review by the Appeals Council, and on May 11, 2010, the Appeals Council refused to overturn the ALJ's decision (Tr. 1-4), thereby making the ALJ's

---

[1] A prior application by Poe "when I hurt my back" was denied in February of 2003 and Poe expressly waived any reopening on that application for benefits. (Tr. 34).

decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2010).[2] Poe appeals from that decision and has exhausted all his administrative remedies.

   II. Issue on Appeal.

Poe's sole argument is that the ALJ erred by failing to assign controlling weight to the opinion of plaintiff's treating physician.

   III. Findings of Fact.

      A. Medical Evidence.

Dr. LaCour's treatment records from October 2006 through November 2006 reflect diagnoses of hypertension and tonic-clonic seizure[3], but do not reflect any complaints from Poe regarding back pain or problems with sitting, standing, or walking; do not reflect any diagnostic testing; and do not contain any restrictions or functional limitations (Tr. 254-56). On October 31, 2006, Dr. LaCour specifically noted that, other than dizziness from one of his medications, namely the Lamictal, Poe "feels well otherwise." (Tr. 254). Consequently, Dr. LaCour discontinued the Lamictal. (*Id*.). Dr. LaCour also noted that Poe was to meet with his employer's "HR person" to discuss "temporary disability" benefits that might be available to him because "[h]e will not be

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2010 edition. All C.F.R. references are to part 404 of the regulations, which addresses claims under Title II of the Act. All of the cited regulations have parallel citations in part 416 of the regulations, which addresses claims under Title XVI of the Act.

[3] Poe experienced this seizure on September 2, 2006. (Tr. 195). He was brought to the hospital by paramedics and admitted through the emergency room "for nuerological consult, further workup and treatment." (Tr. 195, 197). Dr. LaCour first examined Poe on September 2, 2006, and established a follow-up plan during this hospitalization. (Tr. 199-200). Poe was discharged on September 5, 2006. (Tr. 196).

able to get to work if he can't drive." (*Id.*).[4]  Dr. LaCour's treatment records from January through April 2007 (Tr. 295-96), are very similar to his previous treatment records. They reflect diagnoses of hypertension and tonic-clonic seizure, but no complaints from Poe of back pain or problems with sitting, standing, or walking, no diagnostic testing, and no restrictions or functional limitations (Tr. 295-96).  On January 4, 2007, Dr. LaCour noted that Poe did not want to return to work because he was "afraid to get around the forklift again at BLP and work around the chemicals because of the seizure" but then noted that Poe "has had no further seizure."  Tr. 296).

On January 16, 2007, Poe underwent surgery to remove his gallbladder.  (Tr. 273). There is no mention of any complaints by Poe regarding back problems during this hospitalization.  (Tr. 265-278).

On April 26, 2007, Dr. LaCour completed a Physical Capacities Evaluation form based on his diagnosis of a seizure disorder (Tr. 293). Dr. LaCour opined that Poe could sit two hours at one time, stand/walk two hours at one time, sit a total of four hours during an eight-hour day, and stand/walk a total of four hours during an eight-hour day (Tr. 293).  The evaluation form did not provide any explanation for the limitations assessed (Tr. 293).   Nor do the treatment records indicate a basis for any restrictions or limitations.

---

[4] Other than an inability to drive  because of the seizure, the medical records on October 31, 2006, indicate no other basis for Poe's inquiry into "temporary disability" benefits from his employer.

Dr. LaCour's treatment records from October 2007, reflect diagnoses of hypertension and tonic-clonic seizure, but again no complaints from Poe of back pain or problems with sitting, standing, or walking, no diagnostic testing, and no restrictions or functional limitations (Tr. 314). In his report of Poe's October 12, 2007, office visit, Dr. LaCour notes that Dr. Perdue is Poe's "primary care physician" and that Poe had neither had any seizures nor been in to Dr. LaCour's office since January 2007. (Tr. 314).

On March 7, 2008, Poe presented to Ronald Perdue, M.D., for a check of his blood pressure and the notes indicated that Poe complained of lower back pain in the morning, the duration of which was "1 month." (Tr. 302). This is the first complaint of back pain by Poe contained in any of the medical records entered into evidence by Poe, which date back to 2001. (Tr. 216-248). Dr. Perdue's examination on March 7, 2008, revealed full range of motion. Although Dr. Perdue assessed Poe with degenerative disc disease of the lumbar spine (designated as "DDD LS Spine") and osteoarthritis of the lumbar spine (designated as "OA LS Spine"), the record contains no x-ray or MRI report to support that assessment and, with the exception of a prescription for a muscle relaxant (Skelaxin 800 mg # 40) and Lortab 7.5 mg. #20 for pain, no restrictions or functional limitations were assessed by Dr. Perdue. (Tr. 302).

On May 13, 2008, Poe was admitted to the hospital and seen in consultation by William H. Hewitt, M.D. (Tr. 306-307). Dr. Hewitt noted that a brain MRI and a head CT scan taken after Poe was admitted to the emergency room were normal and thus concluded that Poe had suffered "[t]ransient disorientation [which] may have been seizure related." (Tr. 307). According to Dr. Hewitt, Poe complained of severe back

5

pain and reported chronic low back pain due to an injury some years ago (Tr. 307). Dr. Hewitt noted that Poe was given a prescription for a muscle relaxant and a pain medication by his primary care physician, identified in the records as Dr. Perdue.[5] (Tr. 306-307). No restrictions or functional limitations were assessed by Dr. Hewitt. (*Id.*).

Dr. LaCour's treatment records from June 2008, reflect diagnoses of hypertension and tonic-clonic seizure, but no complaints from Poe of back pain or problems with sitting, standing, or walking, no diagnostic testing, and no restrictions or functional limitations (Tr. 313).

On June 27, 2008, Poe was seen by Mark Wiles, M.D. for a "post-hospitalization check-up." (Tr. 321). Dr. Wiles noted that Poe was "doing fine, still having back pain [but] [i]t is no better or worse than it usually is." (*Id.*). Dr. Wiles' examination revealed Poe was well developed and in no apparent distress (*Id.*). Additionally, the examination revealed no weakness, numbness or tingling and was relatively normal except for a finding of lower back pain ("LBP") (*Id.*). Dr. Wiles did not perform any diagnostic tests and did not assess any functional limitations (*Id.*). Poe requested that Dr. Wiles complete a Clinical Assessment of Pain form (*Id.*). Dr. Wiles completed the form and did not assess any functional limitations. He did, however, opine that Poe had pain that would be distracting to the adequate performance of work activities (Tr. 305). Dr. Wiles noted that in completing the pain assessment form, he relied on the results of his examination and

---

[5] During this hospitalization, Poe was also seen by Mark C. Wiles, M.D., the physician who dictated Poe's discharge summary. (Tr. 324). Dr. Wiles was also identified as being in the same office as Dr. Perdue. (Tr. 50).

6

"Plaintiff's experiences" (Tr. 321). Dr. Wiles' opinion was thus based predominantly on Poe's subjective complaints which were neither supported by any clinical findings or medical explanation.

On July 31, 2008, Dr. LaCour completed a second Physical Capacities Evaluation form which referenced only a diagnosis of a seizures (Tr. 315). He opined Poe could sit for two hours at a time, stand/walk for one hour at a time, sit for a total of four hours in an eight-hour day, and stand/walk for a total of two hours in an eight-hour day (Tr. 315). The evaluation form, completed approximately two weeks prior to Poe's hearing before the ALJ, did not provide any explanation for, or objective clinical findings to support, the limitations assessed (Tr. 315).

B. <u>Other Evidence</u>.

Poe was born on April 15, 1957. (Tr. 38). He was 51 years of age at the time of the administrative hearing on August 12, 2008. (Tr. 38). He has a high school education. (Tr. 39). He has past work experience as a batch mixer and a forklift operator. (Tr. 66). Poe is insured for a period of disability and Disability Insurance Benefits through December 31, 2010. (Tr. 87).

Poe testified he injured his back "years ago" and had lower back problems (Tr. 44-45). Poe described the pain as "[i]t hurt me pretty much down in my legs." (Tr. 45). He further testified his back began bothering him again in March of 2007, and his doctor prescribed a muscle relaxant, which helped with his pain (Tr. 46, 55). Poe also testified at the hearing that he could walk half a mile, lift 30 pounds, and did not have any problem sitting (Tr. 56).

A vocational expert testified that an individual with Poe's residual functional capacity[6] could perform the jobs of security guard, cashier, and dishwasher (Tr. 69-70).

In a Physical Activities Questionnaire, Poe stated he did household chores, such as washing dishes, mopping, sweeping, and making beds, and also performed outside duties, such as cutting grass and trimming bushes (Tr. 160). Poe asserted that it would take him "3 ½ hours" to complete these duties. (*Id.*).

   III.  Conclusion of Law.

      A.   Standard of Review.

In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a

---

[6] The vocational expert's testimony was in response to a hypothetical which was based upon the restrictions and limitations identified in Dr. LaCour's Evaluation dated April 26, 2007. (Tr. 67-68, 293).

8

conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).

      B.     Applicable Law.

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability. *See* 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity. At the second step, the claimant must prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If, however, the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts

and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity and age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (*citing* Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

    C.    Discussion.

**The ALJ gave an appropriate weight to the opinions of Dr. LaCour, Poe's treating neurologist.**

Controlling weight may be given to a treating physician's medical opinions if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit recently addressed this issue as follows:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440; see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. With good cause, an ALJ may

> disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. Id. at 1240–41.

Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Dr. LaCour did not perform any clinical or laboratory diagnostic techniques regarding Poe's ability to sit, stand, or walk (Tr. 254-56, 295-96, 313-14), and his opinion is inconsistent with Poe's own testimony that he did not have any problems with sitting (Tr. 56).

Dr. LaCour's opinions also fail to measure up when evaluated against the other regulatory criteria for weighing medical source opinions. The regulations provide: "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404,1527(d)(3). As applied in this case, Dr. LaCour did not offer any explanation or even cursory justification for his opinions (Tr. 293, 315). The regulations also provide that "the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(i). Dr. LaCour saw Poe only four times when he rendered his April 2007 opinion and on not one of those occasions do the records indicate that Poe ever complained about back pain or any problem sitting, standing or walking. In point of fact, not one physician in any of the medical records in evidence ever notes a complaint by Poe regarding back pain until March 7, 2008, when Poe presented himself to Dr. Perdue for a check of his blood pressure. Thus, Dr. LaCour cannot be said to have had the sort of longitudinal picture of Poe's alleged back impairment that a long-term treating source would normally possess. The regulations state: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4). Both
11

of Dr. LaCour's opinions are inconsistent with his own treatment notes that do not reflect any diagnostic findings consistent with his opinions. *See* Kennedy v. Astrue, 2010 WL 1643248, at *7 (S.D. Ala. Apr. 21, 2010) (treating physician's opinion not given controlling weight where opinion was not supported by treatment notes).

Despite the lack of any evidentiary support for either of Dr. LaCour's opinions, the ALJ nonetheless relied upon the April 27, 2007 report based upon her evaluation of all the evidence of record, including Poe's testimony. The ALJ specifically concluded that:

> The residual functional capacity set forth above is supported by the objective findings and opinions of Dr. LaCour in Exhibit 8F [Dr. LaCour's April 26, 2007 Evaluation]; by the conservative treatment sought by the claimant; by the claimant's wide range of activities of daily living (e.g. his sworn testimony that he could cook for himself, do his own laundry, empty the trash, watch television, sit on the porch, talk on the telephone, check on his mother, visit with his lady friend every day, and drive a car (he acknowledged that he drove himself to the hearing) and the Physical Activities Questionnaire and Pain Questionnaire, Exhibit 4E and 7E, when he noted that he did not have any problems sitting; his condition did not limit his ability to shop, load and unload groceries or other items to and from the car; he walked around the house and sat and watched television); . . .

(Tr. 28). The ALJ described the opinion of Dr. LaCour upon which she relied as:

> Dr. LaCour opined that the claimant could sit, stand or walk 2 hours at one time; he could sit a total of 4 hours during an entire 8-hour work day and he could stand/walk a total of 4 hours during an entire 8-hour work day. The claimant could occasionally lift up to 25 pounds and continuously lift up to 10 pounds, occasionally carry up to 20 pounds, frequently carry up to 10 pounds and continuously carry up to 5 pounds. He could use his hands for repetitive action such as simple grasping, pushing and pulling of arm controls and fine manipulation, and he could use his feet for repetitive movements as in pushing and pulling of leg controls. The claimant could continuously reach, frequently bend and occasionally squat and crawl, but he could never climb. Dr. LaCour listed the diagnosis as seizure disorder

and noted that the claimant had a total restriction of activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automobile equipment and exposure to dust, fumes and gases.

(Tr. 27). The ALJ specifically stated that she relied upon Dr. LaCour's April 27, 2007 Physical Capacities Evaluation because she was "persuaded by the limitations imposed in this report based on the medical evidence, the nature of the claimant's condition, particularly the seizure disorder and asthma; and there is enough evidence to identify a treating relationship." (Tr. 27).

Poe does not specifically take issue with the ALJ's reliance on the Physical Capacities Evaluation by Dr. LaCour dated April 26, 2007 and rejection of the later report but argues that:

> [T]he ALJ omitted from her residual functional capacity determination the limitation indicated by Dr. LaCour that Mr. Poe can stand/walk combined for not more than four (4) hours in an eight (8) hour work day. The ALJ's finding of fact only limits Mr. Poe from standing more than two hours at a time, so that under her findings, contrary to the opinion of Dr. LaCour, standing or walking would be allowed for six or even eight hours per day, so long as breaks were allowed at two-hour intervals.

(Doc. 19 at 5).[7] Poe's argument is predicated on the opening paragraph of the ALJ's Finding of Fact No. 5, which states:

> The claimant has the residual functional capacity to perform less than the full range of light work. Specifically, he can lift and carry 10 pounds frequently and 20 pounds occasionally. He can stand, walk and sit 2 hours

---

[7] Poe has without explanation failed to incorporate Dr. LaCour's determination in the April 26, 2007 evaluation that he could sit for up to four (4) hours in an eight (8) hour workday.

13

> at a time together for a total of 8 hours. He can continuously reach. The claimant can frequently bend, occasionally squat and crawl. The claimant can never climb or work around unprotected heights, dangerous and moving equipment, marked changes in temperature and humidity, drive automotive or similar equipment. He cannot work in environments with concentrated exposure to dust, fumes and gases.

(Tr. 24, Finding of Fact No. 5). Poe has, however, ignored the actual substance of the ALJ's finding concerning his residual functional capacity as set forth above (Tr. 27-28) and as evident in the hypothetical question presented to the vocational expert during the August 12, 2008 evidentiary hearing, in pertinent part:

> Let's assume that we have an individual with the same past work history as Mr. Poe and let's assume that this individual could ***stand and walk*** no more than two hours at a time ***for up to four hours in an eight-hour workday***. He could ***sit*** for no more than two hours at a time and stand and walk, or sit ***for up to four hours in an eight-hour workday***; . . .

(Tr. 67, emphasis added). The ALJ's subsequent emphasis on the "no more than two hours at a time" portion of Dr. LaCour's April 2007 opinion regarding Poe's ability to sit or stand. (Tr. 68) does not render the ALJ's determination that Poe retained "the residual functional capacity to perform less than the full range of light work" erroneous, particularly in light of the ALJ's incorporation of Poe's testimony concerning his activities of daily living. Nor does the ALJ's emphasis on the "no more than two hours at a time" limitation mean that she determined that Poe could stand or walk "for six or even eight hours per day, so long as breaks were allowed at two-hour intervals" as argued by Poe. (Doc. 13 at 5).

Consequently, this action is distinguishable from Manning v. Astrue, 2010 WL 3699850, *5 (S.D. Ala. Sept. 10, 2010), in which the undersigned held that:

14

> The ALJ's decision to rely so closely on Dr. Rutledge's findings, yet to alter them to comport with the state agency's findings, is ***not explained or supported*** by the portions of the record cited by the ALJ. Because the court finds that plaintiff is entitled to remand on her first ground, the court does not address the remaining assignments of error.

2010 WL 3699850 at *5 (emphasis added). The ALJ in the instant case applied Dr. LaCour's first assessment because it more closely comported with the evidence proffered by Poe concerning his activities of daily living , including his testimony at the August 12, 2008 hearing before the ALJ. It is evident that the ALJ did not use the Physical Capacities Evaluation by Dr. LaCour dated July 31, 2008, twelve days preceding the hearing, because it did not comport with Poe's testimony and the other evidence of record.

Similarly, this case is distinguishable from Huddleston v. Astrue, 2008 WL 2225697, *5 (S.D. Ala. May 29, 2008), in which the ALJ purported to apply the treating physician's Physical Capacities Evaluation but ignored the limitation "to sitting a total of 2 hours in an 8-hour workday and standing and/or walking a total of 2 hours in an 8-hour workday (i.e ., the ability to sit, stand, and walk a total of 4 hours in an 8-hour workday)." The ALJ in this case did not ignore Dr. LaCour's limitation to sitting a total of 4 hours and to standing/walking a total of 4 hours in an 8-hour workday (i.e., the ability to sit, stand and walk a total of 8 hours in an 8-hour workday) provided Poe sits or stands/walks no more than 2 hours at a time.

Finally, there is no basis for Poe's contention that this case is similar to Catledge v. Astrue, 2010 WL 3211151, *8 (S.D. Ala. July 28, 2010)("Although the RFC adopted

15

by the ALJ appears to place more restrictions and limitations on the plaintiff than Dr. Crotwell and Dr. Houston have imposed, there is no medical opinion, either by an examining or non-examining medical source which supports the specific restrictions and limitations imposed by the ALJ."). In this case, the ALJ clearly applied the restrictions imposed by Dr. LaCour, Poe's treating physician, even though such restrictions were not supported by any objective clinical findings recorded by Dr. LaCour, because the ALJ found those restrictions supported by Poe's other evidence and testimony.

Poe's final argument concerns the Physical Capacities Evaluation prepared by Dr. LaCour on July 31, 2008, twelve days prior to Poe's hearing before the ALJ. Poe argues that the ALJ "gave no reason for rejecting this evidence." (Doc. 13 at 8). Consequently, Poe contends that the second evaluation must be "accepted as true." (*Id*. at 9, *citing* MacGregor v. Astrue, 786 F.2d 1050, 1058 (11th Cir. 1986)). Poe's argument is without merit. The ALJ acknowledged the existence of the later evaluation but expressly found that the first evaluation was supported not only by the conservative treatment sought by Poe, but by Poe's evidence and testimony concerning his "wide range of activities of daily living " and his lack of any problems sitting. (Tr. 27). Consequently, the ALJ clearly determined that the first evaluation by Dr. LaCour was supported by substantial evidence while the second was not. This is not a case such as MacGregor v. Astrue, 786 F.2d 1050, 1058 (11th Cir. 1986), in which a treating physician's opinion was not properly refuted. Poe himself refuted the applicability of Dr. LaCour's second Physical Capacities Evaluation when he testified under oath at the hearing that he had no problem sitting (Tr. 56). Nor is it a case such as Elam v. Railroad Retirement Bd., 921 F.2d 1210,

1215 (11th Cir. 1991), in which the ALJ gave no reason for discrediting the treating physician's conclusion. Here, the ALJ gave specific reasons for accepting Dr. LaCour's first evaluation, namely that it was supported by Poe's evidence and testimony. The second evaluation was not.

Even if it could be said that the "accepted as true" doctrine set forth in MacGregor applied in this case, it does not appear that the doctrine is binding authority in this circuit. The Eleventh Circuit has held, "The law of this circuit is emphatic that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (*citing* United States v. Woodard, 938 F.2d 1255, 1258 (11th Cir. 1991), *cert. denied*, 502 U.S. 1109 (1992). Eleventh Circuit cases that dealt with the issue of an ALJ ignoring or improperly refuting a treating physician's opinion issued before MacGregor, such as Boughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985); Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982), remanded the respective cases for further administrative proceedings rather than ordering payment of benefits, despite finding that the treating physician's opinion had been ignored or not properly refuted. *See* Robinson v. Tanner, 798 F.2d 1378, 1383 (11th Cir. 1986) (when panel opinions of this Circuit conflict, the earlier decision is controlling). District courts within the Eleventh Circuit have held that an ALJ has not accepted a treating physician's opinion as true even though the opinion was not properly refuted. See Harris v. Astrue, 546 F. Supp. 2d 1267, 1282 (N.D. Fla. 2008); *see also* Peters v. Astrue, 2010 WL 3827992, at *9 (N.D. Ga. Sept. 24, 2010); Byrd v. Astrue, 2010 WL 3749083, at *12 (S.D. Ala. Sept. 21, 2010). Moreover, accepting a treating physicians opinion as

17

true because it was not properly refuted is inconsistent with the Social Security Act. Under the Act, the Social Security Administration is the fact-finder. *See* 42 U.S.C. 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). No provision in the Act authorizes a reviewing court to declare evidence to be "true" for any reason, to prevent the agency from reaching a decision based on the record as a whole.

    V.    <u>Conclusion</u>.

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**Done** this 18th day of July, 2011.

                                /s/ Katherine P. Nelson
                                **KATHERINE P. NELSON**
                                **UNITED STATES MAGISTRATE JUDGE**